amendment of the charter of the existing mutual company. But we have no evidence of any liability having been set up by the mutual company or the stock company for such services, nor have we any evidence that any liability was canceled by the issuance of stock. The taxpayer has not shown that the corporation was under any legal or moral obligation to pay for any service which he performed. If a portion of the stock thereof was issued for services it is not shown by any corporate act and is not reflected on any of the corporate records. We are unable to reach the conclusion that the stock, or any part thereof, was issued for services of the taxpayer.

The taxpayer doubtless acquired the stock of the corporation at less than its value, but no gain or loss results from buying an article at less than its value until it is realized by sale or other disposition. The taxpayer owned none of the stock prior to March 1, 1913, and as a consequence, the only basis for determining gain or loss on the sale of the stock is cost. Both the cost and the selling price are set out in the findings of fact. The Commissioner determined the taxable gain on the installment basis in proportion as the selling price for the stock was paid, and this method of computation is not in question in this appeal. The initial payment was less than 25 per cent.

*Order of redetermination will be entered on 15 days' notice, under Rule 50.*

---

## APPEAL OF GEORGE W. CURTISS.

Docket No. 2327.   Decided July 20, 1926.

The cost of stock determined for the purpose of determining gain on the sale thereof.

*Kenneth Taylor, Esq.*, for the petitioner.
*John D. Foley, Esq.*, for the Commissioner.

Before GRAUPNER,[1] PHILLIPS and TRAMMELL.

This is an appeal from the determination of a deficiency in income tax for 1918 in the amount of $1,296.66. The deficiency results from the refusal of the Commissioner to accept value instead of cost as the basis for determining gain on the sale of stock acquired in 1914 and sold in 1917.

FINDINGS OF FACT.

The taxpayer is an individual residing at Minneapolis, Minn. About 1908 he became associated with Morgan J. McMichael and

---

[1] This decision was prepared during Mr. Graupner's term of office.

E. S. Warner in the Merchants Life and Casualty Co., a Minnesota mutual insurance company writing accident and health insurance, principally in Minnesota and Iowa. The taxpayer acted as an officer and director of this company from 1910 through 1917.

The taxpayer and his two associates used their own funds in building up the company. Approximately $44,000 was thus advanced prior to 1913, of which amount the taxpayer advanced one-fourth, or $11,000. At the end of 1912 the company had 12,041 policyholders and a surplus of $43,924.26. Thereafter the number of these policyholders remained substantially the same. At the end of 1913 the surplus had increased to $63,016.48.

On February 2, 1914, the charter of the Merchants Life and Casualty Co. was amended to make it a stock company. A stock insurance company, under the laws of Minnesota, is required to have a paid-in capital of at least $100,000, and securities of that amount must be deposited with the Insurance Commissioner. In 1914 the minimum amount of stock required by law was issued in the form of 2,000 shares of the par value of $50 each. This stock was issued for par to the original organizers of the company in the same proportion as that upon which they had advanced money to the company. The taxpayer received 492 shares, Morgan J. McMichael 984 shares, and E. S. Warner 492 shares. The remaining 32 shares were issued as qualifying shares to directors. After the change to a stock company had been approved by the Commissioner of Insurance of Minnesota and the stock had been sold, the company had a paid-in capital and surplus of $163,016.48 and about 12,000 policyholders, and it operated as a stock company, with the taxpayer, Morgan J. McMichael and E. S. Warner as officers. The cost of the 492 shares of stock issued to the taxpayer in 1914 was $35,000, of which $24,600 was paid in cash, and $11,000 by credit for advances to the old mutual company. The taxpayer sold these shares in 1917 for $49,947.50. This amount was $14,347.50 in excess of the cost thereof to the taxpayer. The sale price was paid in three installments. The gain received by taxpayer from sale of stock in 1917 was $652.31, in 1918 $10,134.47, and in 1919 $3,560.72.

OPINION.

TRAMMELL: This proceeding involves the same question which was presented in the Appeal of Morgan J. McMichael, 4 B. T. A. 266.

*Order of redetermination will be entered on 10 days' notice under Rule 50.*